UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

ERIC M. CREMA,

        Plaintiff,

    v.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*,

        Defendants.

Case No. 2:17-cv-01535-RFB-VCF

**ORDER**

## I.   INTRODUCTION

Before the Court are two motions: Plaintiff Eric M. Crema's Motion for Sanctions (ECF No. 39) and Defendants' Las Vegas Metropolitan Police Department ("LVMPD"), Officer Michael R. Freeman, Officer D. Sigmund, and Sergeant William M. Wilson's Motion for Summary Judgment (ECF No. 40).

For the foregoing reasons, the Court grants Plaintiff's Motion for Sanctions and grants in part and denies in part Defendants' Motion for Summary Judgment.

## II.   PROCEDURAL BACKGROUND

Plaintiff filed his Complaint in this action on May 31, 2017. ECF No. 1. On July 10, 2018, Plaintiff then filed the operative Amended Complaint ("FAC"). ECF No. 18. The FAC asserts federal law claims for violations of Plaintiff's civil rights to life and security of person against Defendants Freeman, Sigmund, and Wilson, and municipal liability against Defendant LVMPD. It also asserts state law claims for negligence against all Defendants, negligent supervision and training against Defendant LVMPD, intentional infliction of emotional distress against all

Defendants, and battery against all Defendants. Id.

Plaintiff filed the instant Motion for Sanctions on May 30, 2019. ECF No. 39. Defendants responded on June 13, 2019. ECF No. 14. Plaintiff both replied and filed an errata on June 18, 2019. ECF Nos. 42, 43.

Defendants filed the instant Motion for Summary Judgment on June 3, 2019. ECF No. 40. Plaintiff responded on June 24, 2019. ECF No. 44. On June 26, 2019, Plaintiff also filed a Notice of Manual Filing, including video surveillance. ECF No. 45. Defendant replied on July 8, 2019. ECF No. 46.

On March 12, 2020, the Court held a hearing on both motions. ECF No. 49. In addition  to ordering that the motions be denied without prejudice, the Court scheduled an evidentiary hearing for Defendants Wilson and Sigmund, Captain Sean Toman, and Deputy Chief Walsh to testify regarding the contents of the body camera footage from the incident involving Plaintiff and why it was not preserved, as well as testimony from a witness familiar with (1) the technical system for uploading and maintaining body camera footage and (2) the evidence audit trail. Id. Defendants were also ordered to, prior to the evidentiary hearing, provide the Court with technical manuals associated with the system. Id.

On April 14, 2021, the Court held the evidentiary hearing. ECF No. 53. Defendants Sigmund and Wilson, and non-parties Lieutenant Allen Larsen, Captain Sean Toman, and Assistant Sherriff Andrew Walsh testified. Id. The Court incorporated the Motion for Sanctions, and the parties' response and reply. Id.

The Court reinstated the Motion for Sanctions and Motion for Summary Judgment. See ECF No. 54. The Court inadvertently denied the motions without prejudice at the March 12, 2020, motion hearing, when it only intended to allow for supplement and refiling of the motions based on testimony received at the evidentiary hearing. See ECF Nos. 49, 54. On June 1, 2022, the parties stipulated that no further briefing was necessary on Plaintiff's Motion for Sanctions and Defendants' Motion for Summary Judgment. ECF No. 55.

This Order follows.

### III.   MOTION FOR SANCTIONS

The Court first addresses Plaintiff's Motion for Sanctions pursuant to Federal Rule of Civil Procedure 37(e).

On June 2, 2015, Plaintiff was allegedly causing a disturbance at a Lowe's store on Boulder Highway in Las Vegas, Nevada. Defendants Freeman, Sigmund, and Wilson responded to the call, leading to Plaintiff's arrest. What happened inside and outside the store is subject to dispute. This motion concerns video footage capturing what happened outside. Defendant Sigmund's body camera recorded the footage, capturing the incident from the time she arrived at the Lowe's store to when she cleared the scene. She is the only officer that wore a body camera during the incident. After the incident, she downloaded the footage to Defendant LVMPD's cloud system. The footage was queued for deletion on July 17, 2015, and ultimately deleted on July 24, 2015. The footage, according to Plaintiff, would have showed how Defendant Freeman placed his knee in Plaintiff's back forcing Plaintiff's torso onto the hot asphalt; the degree of force Defendant Freeman used to hold down Plaintiff's head to the hot asphalt with his hand; whether Plaintiff was flailing with his legs or kicking at the Defendant officers; and how long the officers held Plaintiff on the hot asphalt.

Plaintiff argues that, because he was charged in a criminal proceeding based on the events at issue, and there was an ongoing civil case, the footage should not have been deleted. Doing so was in violation of Defendant LVMPD's policies, as well as criminal, civil discovery, and preservation of evidence laws concerning electronically stored information ("ESI").[1] Defendants argue that the deletion of the body camera footage does not warrant any sanctions because the footage was lost as a result of routine system maintenance, and the prejudice to Plaintiff is minimal.

The Court concludes that sanctions for the deletion of the body camera footage are appropriate.

### a.   Legal Standard

"Spoliation is the destruction or material alteration of evidence, or the failure to otherwise preserve evidence, for another's use in litigation." <u>Fast v. GoDaddy.com LLC</u>, 340 F.R.D. 326,

---

[1] Plaintiff asserts that deleting the body camera footage amounted to a violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) because the evidence was intentionally destroyed.

334 (D. Ariz. 2022). Spoliation sanctions based on a failure to preserve ESI are governed by Rule 37(e) of the Federal Rules of Civil Procedure. Accordingly, under the Federal Rules of Civil Procedure,

> [i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>> (A) presume that the lost information was unfavorable to the party;
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).[2] "[T]he relevant standard of proof for spoliation sanctions is a preponderance of the evidence." Fast, 340 F.R.D. at 335.

    As a preliminary matter, the Court finds that the parties do not properly apply the Rule 37(e) standard to their arguments in favor of, or in opposition to, Plaintiff's instant motion. Plaintiff, for example, argues that the Court can impose sanctions pursuant to its inherent authority, while Defendants assert that the Court should address culpability in addition to prejudice. Further, they argue whether there was culpability behind Defendants' action deleting the body camera footage, and whether there is a need to show "deliberate, bad faith destruction of evidence" or

---

[2] The prior version of Rule 37(e) provided the following: "Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system." Fed. R. Civ. P. 37(e) (amended 2015). In 2015, Rule 37(e) was significantly amended to its current version. The advisory committee noted, in amending this prior version to its current form, that the prior version had "not adequately addressed the serious problems resulting from the continued exponential growth in the volume of [electronically] [stored] information. Federal circuits ha[d] established significantly different standards for imposing sanctions or curative measures on parties who fail to preserve [] this] information. These developments [] caused litigants to expend excessive effort and money on preservation in order to avoid the risk of severe sanctions if a court finds they did not do enough." Fed. R. Civ. P. 37 Advisory Committee Notes to the 2015 Amendment. The 2015 amendment also "foreclose[d] reliance on inherent authority or state law to determine when certain [sanction] measures should be used." Id.

whether "negligent destruction," without a showing of bad faith, is sufficient. While these arguments may be relevant under a prior Rule 37(e) standard, Plaintiff's motion cites the 2015 version and neither argue why the Court should deviate from the current standard. Accordingly, the Court addresses the parties' arguments, to the extent they are applicable, applying the current Rule 37(e) standard for ESI. See id. at 334-35.

### b. Discussion

#### i. The Three Rule 37(e) Prerequisites

Three prerequisites must be satisfied before a court is authorized to consider sanctions under Rule 37(e). See Fed. R. Civ. P. 37(e). First, the ESI "should have been preserved in the anticipation or conduct of litigation." Id. Under Rule 37(e), "a duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." Fast, 340 F.R.D. at 336; see also Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993) ("[S]imple notice of potential relevance to the litigation" is sufficient to establish a duty to preserve information.); Apple Inc. v. Samsung Elecs. Co., 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) (finding that "trial courts in this Circuit generally agree that, as soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action" (brackets in original omitted)). The next prerequisite is that the ESI is lost because of a failure "to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e). Finally, the ESI "cannot be restored or replaced through additional discovery." Id. The Court finds that the three prerequisites are satisfied in this case.

First, the body camera footage should have been preserved in the anticipation or conduct of litigation. Criminal litigation stemming from the June 2, 2015, incident was foreseeable: namely, Plaintiff's criminal prosecution for Obstruction of a Police Officer and Possession of Drug Paraphernalia. The body camera footage would have been "material" and highly relevant to Plaintiff's criminal prosecution. See Brady v. Maryland, 373 U.S. 83, 87 (1963).

Defendants' arguments to the contrary are unavailing. They assert that activity in Plaintiff's criminal case ceased for over two years after a warrant issued for Plaintiff's arrest, and it did not appear that the case was going to proceed. They also did not believe that he would pursue a civil

case. Therefore, they argue, there was no need to preserve the body camera footage in the anticipation or conduct of litigation. The Court disagrees. As stated above, the body camera footage captured conduct material to Plaintiff's criminal prosecution. To be sure, there was no break in the chain of events between the incident underlying Plaintiff's civil case and the criminal case against him: the conduct captured by the body camera footage immediately followed the conduct underlying the charges against him. Thus, the body camera footage was foreseeably material and relevant evidence in both his pending criminal proceedings and future litigation, including this civil case. See Fast, 340 F.R.D. at 336; cf. Ungar v. City of New York, 329 F.R.D. 8, 14 n.2 (E.D.N.Y. 2018), aff'd, No. 21-1384-CV, 2022 WL 10219749 (2d Cir. Oct. 18, 2022) ("Where it is foreseeable that evidence may be relevant to a criminal proceeding, the State's failure to preserve it can support an adverse inference instruction in a civil proceeding arising out of the same events."). Indeed, Plaintiff filed this lawsuit while his criminal prosecution was ongoing. In fact, Plaintiff's criminal case was closed on May 6, 2019, almost two years after Plaintiff's civil case commenced. Thus, the Court finds that Defendants had a duty to preserve the body camera footage before it was deleted on July 24, 2015. Glover, 6 F.3d at 1329; Fast, 340 F.R.D. at 336; Apple Inc., 888 F. Supp. 2d at 991.

Next, the Court finds that Defendants failed to take reasonable steps to preserve the body camera footage. Defendant LVMPD's body camera policy requires that unlabeled or uncategorized recordings be auto-deleted at 45 days. By contrast, when a body camera recording is labeled or categorized as a "use of force (low level/intermediate)," the Category Retention Schedule is 90 days, but if there is an arrest made, the arrest retention schedule overrules."[3]  In addition, if a suspect is arrested for a misdemeanor or cited, the body camera recordings must be preserved for one year. Here, Plaintiff was charged with two misdemeanors and the incident involved use of force. Defendant Sigmund downloaded the video, and two supervisors—Defendant Wilson, and his supervisor, Lieutenant Sean Toman—reviewed the footage and

---

[3] Officers are required to label, categorize, or both, recordings as soon as practical but no later than the end of the shift. LVMPDnv.Evidence.com also provides detailed tracking on who accesses recorded data, when, and for what purpose. This "extensive audit system prevents data tampering, deleting, or copying."

prepared written reports regarding the incident.[4] Thus, at a minimum, the body camera footage should have been preserved for at least one year following the incident. Instead, the footage was queued for deletion on July 17, 2015 (45 days after the incident) and automatically deleted on July 24, 2015 (52 days after the incident). As such, Defendants' argument that the recording did not need to be preserved for more than 45 days because the video was either unlabeled or assigned to a pseudonym Plaintiff gave them when he was arrested lacks merit. Consequently, the Court finds that Defendants failed to take reasonable steps to preserve the body camera footage.

Finally, the Court finds that the body camera footage cannot be replaced through additional discovery. Plaintiff deposed supervising officials, including Defendant Wilson, Lieutenant Toman, and Deputy Chief Walsh, who reviewed the footage and investigated the incident. Additionally, other eyewitnesses <u>can</u> discuss disputed aspects of the incident. Further, the medical records pertinent in this action <u>may</u> include objective evidence of Plaintiff's injuries that recordings could have shown. Defendants argue that all this is a sufficient replacement for the deleted video footage. The Court, however, finds that Defendants' own statements and testimony from their supervisors and third-party eyewitnesses are not an adequate substitute. Moreover, the missing footage was especially valuable because it would have shown the way the officers restrained Plaintiff's back when Plaintiff was on the hot asphalt; the degree of force the officers used to hold Plaintiff's head down to the hot asphalt; Plaintiff's conduct on the ground, including whether he was flailing with his legs or kicking at the officers; and how long the Plaintiff was held on the hot asphalt by the officers[5]—all evidence critical to Plaintiff's theory that Defendants' use of force outside the Lowe's store violated his rights. Accordingly, the Court finds that the body camera footage cannot be replaced through additional discovery.

The Court concludes that the three Rule 37(e) prerequisites requirements are satisfied, and

---

[4] According to Defendant Wilson, shortly after the incident, a dayshift briefing concerning Defendant Freeman's use of force against Plaintiff was provided to help officers and supervisors better handle hot asphalt situations to prevent injuries of the nature sustained by Plaintiff. It is thus also reasonable to infer that Defendant Freeman knew these discussions were based on the supervisors' review of the footage from the body camera.

[5] The supervising officials that reviewed the body camera footage do not appear to agree on the length of time Plaintiff was on the hot asphalt. They agree, however, that Plaintiff was kept on the ground longer than was appropriate.

1    it now considers which, if any, of the two levels of sanctions under Rule 37(e) to apply to

2    Defendants for their failure to preserve the body camera footage.

3                              **ii.   Rule 37(e)(1) Prejudice**

4            Under Rule 37(e)(1), a court may "order measures no greater than necessary to cure the

5    prejudice" but only if such measures are based "upon finding prejudice to another party from loss

6    of the information." The Court has significant discretion in determining what measure satisfies

7    this standard. See Fed. R. Civ. P. 37 Advisory Committee Notes to the 2015 Amendment. In effect,

8    Rule 37 requires the Court to quantify the prejudice caused by the spoliation to determine the

9    sanctions that would be appropriate. Id. "Care must be taken, however, to ensure that curative

10   measures under subdivision (e)(1) do not have the effect of measures that are permitted under

11   subdivision (e)(2) only on a finding of intent to deprive another party of the lost information's use

12   in the litigation." Id.; see, e.g., Doubleline Cap. LP v. Odebrecht Fin., Ltd., No. 17-CV-4576, 2021

13   WL 1191527, at *9 (S.D.N.Y. Mar. 30, 2021) (permitting under Rule 37(e)(1) presentation

14   evidence and argument to a jury concerning the defendants' intentional destruction of evidence).

15           For the reasons discussed above regarding why the body camera footage cannot be replaced

16   with additional discovery, the Court finds that Plaintiff was prejudiced by Defendants' failure to

17   preserve the body camera footage.

18           Having found that the lost evidence cannot be replaced, and that Plaintiff is prejudiced by

19   the Defendants' failure to preserve this evidence, the Court must now fashion a remedy sufficient

20   to cure the prejudice. The Court finds that an appropriate remedy is that Defendants shall be

21   precluded from disputing Plaintiff's version of events that would have been substantiated by the

22   deleted video and that are disputed by the parties. This specifically encompasses: a.) the way the

23   officers restrained Plaintiff's back when Plaintiff was on the hot asphalt; b.) the degree of force

24   the officers used to hold Plaintiff's head down to the hot asphalt; c.) Plaintiff's conduct on the

25   ground, including whether he was flailing with his legs or kicking at the officers; and d.) how long

26   the Plaintiff was held on the hot asphalt by the officers.

27                              **iii.   Rule 37(e)(2) Intent**

28           The Court further finds that severe sanctions are also warranted under Rule 37. Under Rule

37(e)(2), a court may impose more severe sanctions, either (1) "presum[ing] that the lost information was unfavorable to the party," (2) "instruct[ing] the jury that it may or must presume the information was unfavorable to the party," or (3) "dismiss[ing] the action or enter[ing] a default judgment," but only "upon finding that the party <u>acted with the intent to deprive</u> another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2) (emphasis added). "Although direct evidence of such intent is always preferred, a court can find such intent from circumstantial evidence." <u>Fast</u>, 340 F.R.D. at 339. What is more, "[n]egligent or even grossly negligent behavior does not logically support that inference." Fed. R. Civ. P. 37 Advisory Committee Notes to the 2015 Amendment. Instead, the ESI must be unavailable due to "a party's intentional loss or destruction of [it] to prevent its use in litigation," because this is the conduct that "gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for [its] loss or destruction." <u>Id.</u> Upon finding an intent to deprive, a court may impose the sanctions listed in Rule 37(e)(2), regardless of whether there is prejudice. <u>See</u> <u>id.</u>

The Court finds that there is circumstantial evidence that Defendants acted with the intent to deprive Plaintiff of the body camera footage, even if the footage may have allegedly been deleted as part of 'routine' maintenance. Multiple officers viewed this video and had the opportunity to designate or label it for continued retention, but they all deliberately choose not to do so despite knowing the retention policy and the significance of this video to the arrest and future litigation. First, Defendant Sigmund was aware of Defendant LVMPD's policy that, because the incident involved use of force and a misdemeanor arrest, the video footage should have been preserved beyond the automatic deletion date of 45 days. Twice, she failed to ensure it was: first, on the day she first downloaded the video and second, on June 12, 2015, the date the evidence audit trail shows she once again accessed the video.

Second, Defendant Wilson, the officer in charge of the scene during the incident, reviewed the video footage, and despite noting issues with the use of force in the video, did not seek to preserve it.[6] In the end, the footage was deleted in clear violation of Defendant LVMPD's body

---

[6] Defendant Wilson reviewed Defendant Freeman's Incident Report on June 3, 2015, and noted the existence

1  camera policy. See Bistrian v. Levi, 448 F. Supp. 3d 454, 476 (E.D. Pa. 2020) ("A spoliating

2  party's own policies may be instructive, as well—destroying evidence in violation of an internal

3  policy requiring preservation is more likely to be deliberate."); see also Culhane v. Wal-Mart

4  Supercenter, 364 F. Supp. 3d 768, 774-75 (E.D. Mich. 2019) (inferring "intent to deprive" where

5  the defendants "knew or should have known to save the exterior video footage and for whatever

6  reason(s) did not do so, which permitted it to be overwritten").[7] Relatedly, Defendant Sigmund

7  failed to indicate in her Declaration of Warrant/Summons stemming from the incident that she was

8  wearing a body camera or that she had viewed such footage. Nor did Defendant Freeman's June

9  2, 2015, dated Incident Report[8] document the existence of the body camera footage from the

10  incident. Omitting this information from these documents also violated LVMPD's body camera

11  footage policy. See Bistrian, 448 F. Supp. 3d at 476.[9] Thus, Defendants Sigmund and Freeman

12  knew of the existence of the footage and failed to preserve it or even document it as required by

13  the law and according to department policy respectively. See Culhane, 364 F. Supp. 3d at 774.

14  Defendant Wilson also knew or should have known to take further steps to preserve the footage.

15  See id.

16      Third, the failure to disclose the existence of this footage also coincides with Plaintiff's

17  criminal prosecution from that incident. In fact, at the time the video was deleted, Plaintiff was

18  charged with the crimes of Obstruction of a Police Officer and Possession of Drug Paraphernalia.

19  Thus, criminal proceedings were in process. The Court thus finds that Defendants had an

20  obligation under Brady which they would have understood to preserve this material evidence for

21  ─────────────
    of the body camera footage and how it showed that Plaintiff should have been lifted up from the hot asphalt sooner.
22  After his review, Defendant Wilson spoke directly with Defendant Freeman about what he observed from the body
    camera footage.

23      [7] Both Captain Toman and Deputy Chief Walsh reviewed the body camera footage and raised concerns with
24  the use of force used against Plaintiff, but they did not act to preserve the footage despite raising these issues.

25      [8] Defendant Freeman filed a Use of Force report to document the injuries that Plaintiff had sustained because
    of being on the hot asphalt, following the incident. Defendants' response to Plaintiff's motion for sanctions asserts
26  that this report is bate stamped LVMPD 0017-23, but they do not attach it to the response. Defendants separately state,
    and attach, the Incident Report initiated by Defendant Freeman is bate stamped as LVMPD 0006-0014. It appears that
27  Plaintiff's motion attaches pages from a document showing the same bate stamps as Defendants' attached Incident
    Report but refers to it as the Use of Force report. It is unclear if these two reports are the same.

28      [9] Even though it is LVMPD policy to report use of force incidents, Defendants Sigmund and Wilson testified
    that they did not file their own reports because they believed they did not use reportable force against Plaintiff.

Plaintiff's prosecution.  Because of Defendants Freeman, Sigmund, and Wilson's actions, Plaintiff did not even <u>know</u> that this body camera footage existed until September 2018—more than three years after the June 2015 incident—when Defendants finally disclosed its existence in response to a discovery request in this instant action. The Court thus finds that Defendants acted with the intent to deprive Plaintiff of the body camera footage by failing to preserve and timely disclose the existence of the body camera footage.

The Court's finding that the Defendants' acted with intent to deprive Plaintiff of the camera footage provides an additional and separate basis for sanctions against Defendants under Rule 37(e)(2).

### iv.  Sanctions

The Court now elaborates the sanctions that will be imposed based upon its prior findings. Plaintiff asks for sanctions that "strike Defendants' answer as to liability;" or alternatively, preclude any evidence or testimony from the Defendants that: Plaintiff threw himself on the ground or went intentionally limp; he resisted arrest; he kicked at the officers; and he was on the asphalt for less than five to ten minutes. Defendants argue that, if sanctions are warranted, only minor sanctions are appropriate because destruction of the body camera footage was not deliberate. As such, the Court should impose either: reasonable monetary sanctions to compensate Plaintiff for the cost of preparing the sanctions motion or a jury instruction which neutrally explains the loss of evidence without a presumption of favorability.

The Court finds that Defendants' failure to preserve the body camera footage is significant. Video recordings can be strong, in many circumstances, dispositive evidence, and much more dependable than eyewitness testimony, especially when such testimony is disputed. The Court is not persuaded, however, that the severe sanctions Plaintiff requests are warranted as there is a chance that a jury could still decide against him, even if the video footage was available. Accordingly, the following permissive adverse inference instruction is sufficient to cure the prejudice of the footage being deleted.

The jury will be instructed as follows regarding the video footage:

There was body camera footage of the use of force used against

Plaintiff outside the Lowe's store, following his arrest inside the store. The footage recorded the incident from the moment officer D. Sigmund arrived at the Lowe's store until the scene was cleared. Defendants Freeman, Sigmund, and Wilson failed to preserve, pursuant to LVMPD's body camera footage policy, this footage for Plaintiff's use in this litigation after the duty to preserve it arose. You may assume that, had Defendants preserved the video, the footage would have tended to corroborate Plaintiff's evidence and would have been unfavorable to Defendants.

Additionally, the Court finds that a sanction should be imposed in the context of deciding dispositive motions in this case. Specifically, the Court finds that Plaintiff's version of the facts of the events, as presumably captured by the deleted body camera footage, be taken as undisputed for the sole purpose of addressing Defendants' instant motion for summary judgment. See Fed. R. Civ. 37(e) (providing a court with significant discretion to "presume that the lost information was unfavorable to the party").

### IV.    MOTION FOR SUMMARY JUDGMENT

The Court next addresses Defendants' Motion for Summary Judgment.

#### a.  Legal Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility

1  determinations at the summary judgment stage. <u>Zetwick v. County of Yolo</u>, 850 F.3d 436, 441

2  (9th Cir. 2017) (citations omitted).

3  **b.  Factual Background**

4  **i.  Undisputed Facts**

5  Based on its review of the evidence and the sanction imposed, the Court finds the following

6  undisputed facts.

7  On June 2, 2015, Plaintiff is at a Lowe's store on Boulder Highway in Las Vegas, Nevada.

8  It is summertime and the ground outside the store is scorching. Someone from Lowe's

9  management calls the police regarding Plaintiff's presence at the store. Defendants Freeman and

10  Sergeant Wilson arrive. They arrest Plaintiff and take him into custody. Defendant Sigmund

11  arrives shortly after Freeman and Wilson. Sigmund is wearing a body camera.[10] The officers are

12  "CIT" trained, meaning they have received mental health crisis intervention training.

13  Defendants Freeman and Sigmund escort Plaintiff outside of the store. Once outside, the

14  Defendant officers throw him onto the hot asphalt next to a police vehicle. Plaintiff cries from that

15  ground that his shirt is lifted, his bare skin now exposed on a speed bump. In response, a "third

16  officer" shoves Plaintiff's head underneath the tire of vehicle with his foot to the point that Plaintiff

17  smells the car exhaust fumes. He cannot breathe. Defendant Freeman has his knee in Plaintiff's

18  back. Defendants Freeman and Wilson hold him onto the asphalt. Defendant Freeman holds

19  Plaintiff's head to the ground. The more Plaintiff struggles to get his skin off the asphalt, the more

20  the Defendant officers stand on him. He screams at the officers, five to six times, that they are

21  hurting him. Plaintiff feels a person on top of his legs. He feels like someone is sticking him with

22  a syringe, or that he is being tasered. He does not kick, or intend to kick, any of the officers. Rather,

23  he begins to move his legs, as a bodily reaction to the hot asphalt burning him, as he lays on the

24  ground with the officers on top of him. He then realizes he is outside next to a police vehicle. The

25  Defendant officers kick and step on him, all while he is being burned by the hot asphalt. He yells

26  that he cannot breathe because of the car exhaust fumes and from the pain of being burned by the

27  _____

28  [10] As set forth above in the Court's analysis of Plaintiff's motion for sanctions, the Court designates Plaintiff's version of the events, presumably captured by the deleted body camera footage outside of the Lowes store, as undisputed.

asphalt. This whole ordeal lasts for up to ten minutes, before he is finally lifted and then placed into a police car.

The officers call paramedics to the scene because of Plaintiff's mental state. Plaintiff is handcuffed with his hands behind his back throughout this struggle. He never attempts to flee the scene or escape from the three Defendant officers.

The hot asphalt burns Plaintiff. He suffers second degree burns to his abdomen, left arm, forehead, and knees. Plaintiff is transported to Clark County Detention Center but is refused by medical staff there because of his injuries. Accordingly, he is transferred to the University Medical Center Burn Center on a legal hold. Plaintiff is charged with the misdemeanor crimes of Obstruction of a Police Officer and Possession of Drug Paraphernalia. An arrest warrant is issued because Plaintiff is unable to be booked due to his injuries.

After the incident, supervising officials, including Defendant Wilson, Captain Toman, and Deputy Chief Walsh, review the body camera footage and determine that Plaintiff should have been taken off the hot asphalt much sooner—before burns could develop. Other than verbal counseling, Defendant officers are not reprimanded or disciplined. No officer takes the necessary steps according to LVMPD policy to preserve the camera footage, since force was used, and Plaintiff was charged with two misdemeanors. Further, a dayshift briefing is conducted to remind officers of their training regarding the dangers of placing someone on a hot surface.

### ii. Disputed Facts

As Defendant Sigmund's body camera did not capture events inside of the Lowe's store, the Court does not treat Plaintiff's version of the facts while he was in the store as undisputed. Accordingly, the Court finds that following facts in dispute. First, the parties dispute whether Plaintiff was under the influence of drugs at the time of the June 2, 2015, incident or whether he was experiencing a mental health crisis. Second, the parties dispute whether Plaintiff was causing a disturbance at the Lowe's store. Finally, the parties dispute the circumstances of the officers' contact with Plaintiff inside the store, including whether he was provoking or threatening the safety of the officers.

///

- 14 -

### c. Discussion[11]

#### i. Federal Law Claims

##### 1. Fourth Amendment Excessive Force (First Cause of Action)

Plaintiff's first cause of action alleges that Defendants used excessive force while they arrested him when they threw him onto, and held him on, the hot asphalt in front of a police vehicle, even though he was already handcuffed. He contends that this conduct deprived him of his right: (1) to be free from excessive use of force by law enforcement officers under the Fourth, Fifth, and Fourteenth Amendments, (2) not to be deprived of life or liberty without due process of law under the Fifth and Fourteenth Amendments, and (3) to be free from pre-conviction punishment as guaranteed by the Fourth, Fifth, and Fourteenth Amendments. The U.S. Supreme Court has held that all constitutional claims, including those for excessive force, which result from "an arrest, investigatory stop, or other seizure" of a free citizen are to be analyzed under the Fourth Amendment, rather than under a substantive due process approach. Graham v. Connor, 490 U.S. 386, 395 (1989). The thrust of the FAC's First Cause of Action concerns Defendants' alleged use of excessive force. Therefore, under the first cause of action, the Court only addresses whether the Defendant officers violated the Fourth Amendment as they investigated and detained Plaintiff.

Defendants seek summary judgment as to the claim under the First Cause of Action that Defendants Freeman, Wilson, and Sigmund used excessive force in violation of the Fourth Amendment. To make out a prima facie case under 42 U.S.C. § 1983, a plaintiff must show that a defendant: (1) acted under color of law, and (2) deprived the plaintiff of a constitutional right. Borunda v. Richmond, 885 F.2d 1384, 1391 (9th Cir. 1989). Claims of excessive force are

---

[11] In addition to being sued in their individual capacities for monetary damages, Plaintiff sues Defendants Freeman, Sigmund, and Wilson in their official capacities for only money damages. "[N]either a State nor its officials acting in their official capacities are persons under § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Instead, "a suit against a state official in his or her official capacity . . . is a suit against the official's office. As such, it is no different from a suit against the State itself." Id. (citation omitted). The U.S. Constitution's Eleventh Amendment insulates states and their officials from suits for money damages when acting in their official capacities. Id. at 70-71; Howard v. Cox, No. 17-cv-01002, 2020 WL 3621341, at *3 (D. Nev. July 2, 2020). Accordingly, with respect to Defendants Freeman, Sigmund, and Wilson, this action only proceeds against them in their individual capacities. The Court will only assess their conduct in an official capacity as it relates to assessing Defendant LVMPD's municipal liability.

analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham, 490 U.S. at 395-97. Under this standard, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. In determining whether a particular use of force was unreasonable and thus in violation of the Fourth Amendment, a court is to consider: "(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion." Williamson v. City of National City, 23 F.4th 1146, 1151 (9th Cir. 2022) (citing Graham, 490 U.S. at 397).

### a.   Type and Amount of Force Inflicted

The Court first analyzes the nature of the force used. Specifically, a must court assesses the "specific factual circumstances of the case in classifying the force used. The nature and degree of physical contact are relevant to this analysis, as are the risk of harm and the actual harm experienced." Id. at 1151-52 (citations omitted).

The Court finds that this factor weighs in Plaintiff's favor. The officers threw him on the ground next to a car, as he was being escorted outside of the Lowe's. He was on the asphalt for up to ten minutes. He screamed that he was being hurt and burned while on the ground, and the officers ignored him. He was not attacking or actively resisting the officers. He was simply trying to get off the blisteringly hot asphalt, and he made this clear to the officers as he squirmed to get off the ground. Specifically, he told the officers five to six times that: they were hurting him; he could not breathe because of the car exhaust; and he was in pain from being burned by the asphalt. Cf. Perkins v. Edgar, No. 21-55552, 2022 WL 14476272, at *1 (9th Cir. Oct. 25, 2022) (concluding that "body language and other facts surrounding the incident, taken in the light most favorable to the plaintiffs . . . should have put the [o]fficers on notice" that he was non-verbally communicating he could not breathe).[12]

---

[12] LVMPD Deputy Chief Andrew Walsh testified that LVMPD knew as far back as 1998 that injuries could result from placing someone on a hot surface, including asphalt, cement, and the hood of a car.

Additionally, the "third officer" shoved Plaintiff's head underneath the tire with his foot, and he could not breathe because of the car exhaust. Defendant Freeman had his knee in Plaintiff's back while he was on the ground. The more Plaintiff struggled to get his skin off the asphalt, the more officers "stood" on him. Plaintiff also felt a person on top of his legs and felt like someone was sticking him with a syringe, or that he had been tasered, and began to move his legs. He next realized he was outside, and that the police were kicking him and stepping on him, all while he was burning from the asphalt. After the incident, Plaintiff was transported to University Medical Center for his injuries, including for second degree burns to his abdomen, left arm, forehead, and knees.

Accordingly, a jury could find that the Defendant officers' use of force was not minimal. Cf. Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1056 (9th Cir. 2003) (finding that officers applying their weight to a suspect's neck and torso while he lay handcuffed on the ground was "severe and . . . capable of causing death or serious injury").

**b. Government's Interest in the Use of Force**

In evaluating the governmental interest in the use of force, a court "generally consider[s] factors including (a) the severity of the suspect's alleged crime; (b) whether the suspect posed an immediate threat to the officers' safety; and (c) whether the suspect was actively resisting arrest or attempting to escape." Isayeva v. Sacramento Sheriff's Dep't, 872 F.3d 938, 947 (9th Cir. 2017). "Among these considerations, the most important is the second factor—whether the suspect posed an immediate threat to others." Williamson, 23 F.4th at 1153 (internal quotation marks omitted). Nevertheless, these factors are not exclusive, and the Court must consider the totality of the circumstances. Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010).

The Court first finds that, in terms of the most crucial factor in assessing the government's interest in using the force it did against Plaintiff—whether the suspect posed a threat to the officers' safety—the facts demonstrate that this factor weighs heavily in Plaintiff's favor. Plaintiff was not a safety threat while he was outside on the asphalt because he was handcuffed, with a knee in his back, and while his body, including his head, were being held to the hot asphalt by Officer Freeman. Additionally, Officer Sigmund was on top of Plaintiff's legs.

As to the severity of Plaintiff's alleged crime, the Court finds that this consideration weighs in favor of Plaintiff too. The only crimes Plaintiff was charged with were misdemeanor crimes, following Plaintiff's arrest at the Lowe's store. The officers had not observed any conduct prior to Plaintiff being handcuffed that he had engaged in a felony or violent criminal act. He was arrested for one of the most minor property offenses—trespass. Defendants nevertheless contend that, while Plaintiff's initial crime of trespass and obstruction were not serious, the severity of these crimes increased when he resisted arrest and kicked Defendant Sigmund. Plaintiff, however, did not kick, or intend to kick, Defendant Sigmund, rather he was, at worst, moving his legs as a bodily reaction to the hot asphalt burning him as he lay on the ground with the officers on top of him—a fact which could be readily observed and which he also told them. On the undisputed facts, the Court finds that the severity of his alleged crimes remained low as to only justify minimal or no use of force.

Defendants separately note that Defendant Wilson had also determined that Plaintiff could be taken into custody because he met the qualifications for an involuntary commitment pursuant to Nevada Revised Statute § 433A.160.[13] "[W]here it is or should be apparent to the officers that the individual involved is emotionally disturbed, that is a factor that must be considered in determining, under Graham, the reasonableness of the force employed." Drummond, 343 F.3d at 1058. Here, even though the officers suspected that Plaintiff might be experiencing a mental health episode, they still failed to deploy less harmful means to place Plaintiff in custody despite being trained in such methods.

In brief, a jury could find that the Defendant officers did not have an interest in using more force against Plaintiff after he was handcuffed in the Lowe's store. See Hyde v. City of Willcox, 23 F.4th 863, 871-72 (9th Cir. 2022) ("[W]e have never required that a suspect's every inch be immobilized before he is considered restrained for a reasonable force analysis. To the contrary, our cases routinely call suspects 'restrained' after they have been handcuffed, or simply pinned

---

[13] Nevada Revised Statute § 433A.160(a) authorizes the police to place a person they have "probable cause to believe" is "in a mental health crisis . . . on a mental health crisis hold by" "[t]aking the person into custody without a warrant for assessment, evaluation, intervention and treatment at a public or private mental health facility or hospital." In Nevada, this is known as a "Legal 2000" detention.

down by officers." (citations omitted)). He was compliant and not resisting them, yet he was forced to the ground to suffer burning on scorching hot asphalt.

### c. Balance Between the Gravity of the Intrusion and the Government's Need for that Intrusion

Finally, the Court concludes, for the reasons stated above, that a jury could find that the balance of interests between the gravity of the intrusion on Plaintiff and the Defendants' need for that intrusion favors Plaintiff. Specifically, a jury could find that Plaintiff's injuries caused by the hot asphalt while the officers were on top of him and holding him down, including second degree burns to his abdomen, left arm, forehead, and knees outweighed the government's need for the intrusion. Given the lack of severity of the alleged crime, Plaintiff's compliance with the officers and the absence of any threat to the officers or the public, the government had minimal need for the level of its intrusion. Thus, Plaintiff has met his burden of setting forth facts that, if proven true, would establish a Fourth Amendment violation.

### d. Qualified Immunity

Defendants contend that the officers are entitled to qualified immunity on Plaintiff's First Cause of Action because there was no clearly established law at the time of Plaintiff's arrest that provided fair notice that their use of force against Plaintiff was unconstitutional.

### i. Legal Standard

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Qualified immunity is an immunity from suit rather than a defense to liability, and "ensures that officers are on notice their conduct is unlawful before being subjected to suit." Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014). In deciding whether officers are entitled to qualified immunity, courts consider, taking the facts in the light most favorable to the nonmoving party, whether (1) the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. Id.

Under the second prong, a court "consider[s] whether a reasonable officer would have had

fair notice that the action was unlawful." Id. at 1125 (internal quotation marks omitted). "This requires two separate determinations: (1) whether the law governing the conduct at issue was clearly established and (2) whether the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law." Green v. City & County of San Francisco, 751 F.3d 1039, 1052 (9th Cir. 2014). While a case directly on point is not required for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al–Kidd, 563 U.S. 731, 741 (2011). Further, while the right must be defined at "the appropriate level of generality[, a court] . . . must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis." Cunningham v. Gates, 229 F.3d 1271, 1288 (9th Cir. 2000). The plaintiff bears the burden of proving that the right is clearly established. Tarabochia, 766 F.3d at 1125.

Summary judgment must be denied where a genuine issue of material fact exists that prevents a finding of qualified immunity. Sandoval v. Las Vegas Metro. Police Dep't, 756 F.3d 1154, 1160 (9th Cir. 2014).

### 1. First Prong

Defendants assert qualified immunity applies here. Defendants contend that this case is similar to Price v. County of San Diego, 990 F. Supp. 1230 (S.D. Cal. 1998) and Paulos v. FCH1, LLC, No. 13-CV-1546, 2015 WL 1119972 (D. Nev. Mar. 12, 2015), aff'd, 685 F. App'x 581 (9th Cir. 2017). In Price, a court in the Southern District of California found that leaving a hog tied individual on 133.9 degree asphalt for several minutes was reasonable. 990 F. Supp. at 1241. In Paulos, a court in this district found that it was reasonable for an LVMPD officer to leave a non-resisting suspect on hot pavement for two minutes and 40 seconds after handcuffing was completed because of the prior "undeniable attempt to resist arrest." 2015 WL 1119972 at *9. Conversely, Plaintiff argues that these two cases and others, finding no constitutional violation, do not foreclose his excessive force claim. Instead, Plaintiff argues that the law was clearly established in Drummond, 343 F.3d, and Howard v. Kansas City Police Dep't, 570 F.3d 984 (8th Cir. 2009), that officers use excessive force when they force a suspect to remain on the hot asphalt even though he is already handcuffed, and the suspect is complaining that he is in pain. Furthermore, Defendants

1   admitted wrongdoing, stating that Plaintiff's head and torso were held down on the hot asphalt for

2   too long, and that the Defendant officers should have stood him up sooner.

3        The Court finds that the facts show that Defendants' conduct, as described above, violated

4   a constitutional right. The officers violated Plaintiff's Fourth Amendment right by using excessive

5   force against him after they arrested him, threw him onto the hot asphalt outside the Lowe's store,

6   and had him lying there for up to ten minutes, even though he was already handcuffed, passive and

7   was communicating that he was in extreme pain. See Drummond, 343 F.3d at 1056; LaLonde v.

8   County of Riverside, 204 F.3d 947, 960-61 (9th Cir. 2000); Palmer v. Sanderson, 9 F.3d 1433,

9   1436 (9th Cir. 1993).

10                              **2.  Second Prong**

11       As for the second prong of the qualified immunity inquiry, Plaintiff has also met his burden

12  in showing that Defendants violated a clearly established right. "A [g]overnment official's conduct

13  violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a]

14  right [are] sufficiently clear' that every 'reasonable official would have understood that what he is

15  doing violates that right.'" Ashcroft, 563 U.S. at 741 (quoting Anderson v. Creighton, 483 U.S.

16  635, 640 (1987)); see also United States v. Lanier, 520 U.S. 259, 271 (1997) ("[G]eneral statements

17  of the law are not inherently incapable of giving fair and clear warning, and in other instances a

18  general constitutional rule already identified in the decisional law may apply with obvious clarity

19  to the specific conduct in question, even though the very action in question has [not] previously

20  been held unlawful." (brackets in original)).

21       Though Plaintiff has not proffered case law with facts "identical" to those at issue here, it

22  is nonetheless evident that a "reasonable official" would have understood that keeping a suspect

23  on scalding asphalt for up to ten minutes even though he is handcuffed, compliant and complaining

24  about pain is unlawful conduct. Drummond, 343 F.3d at 1062. As the Ninth Circuit explained in

25  Drummond, it is clearly established that officers may not employ escalating and harmful force on

26  a suspect who is handcuffed or subdued, compliant and not a threat to officers. Id. (quoting

27  LaLonde v. County of Riverside, 204 F.3d 947, 961 (9th Cir. 2000))(finding that "in a situation in

28  which an arrestee surrenders and is rendered helpless, any reasonable officer would know that a

1    continued use of the weapon or a refusal without cause to alleviate its harmful effects constitutes

2    excessive force") Defendants' conduct was unprovoked and without adequate justification. Thus,

3    Defendants cannot assert that they did not have fair notice that the action was unlawful. See Rice

4    v. Morehouse, 989 F.3d 1112, 1127 (9th Cir. 2021) (finding that the right to be free from the

5    application of non-trivial force for engaging in mere passive resistance was clearly established).

6    The Court finds that Plaintiff has asserted undisputed facts which could establish that Defendants

7    violated Plaintiff's Fourth Amendment rights, which were clearly established at the time.

8            Finally, the Court finds that there are genuine issues of disputed fact as to the conduct at

9    issue. Even if the Court had not imposed a sanction as a result of the destruction of evidence, the

10   Court would still be required to consider the facts as Plaintiff has asserted them in the context of

11   deciding whether or not qualified immunity applies. Adkins, 766 F.3d at 1121. And the genuine

12   issues of disputed fact between the parties prevents the grant of summary judgment. Sandoval, 756

13   F.3d at 1160.

14           In sum, the Court denies both qualified immunity and summary judgment in favor of

15   Defendants Freeman, Sigmund, and Wilson on Plaintiff's First Cause of Action.

16                    **2.   Municipal Liability (Second Cause of Action)**

17           The Court now addresses Plaintiff's municipal liability claim against Defendant LVMPD

18   for the officers' use of force against him.

19           Defendants contend that all LVMPD officers are trained to remove suspects from hot

20   pavement once it is safe to do so and to pay attention to the heat. They also assert that Plaintiff

21   failed to generate evidence that LVMPD fails to train that pavement burns are a widespread

22   problem or that training for LVMPD officers falls below constitutional mandates. Plaintiff

23   responds that Defendant LVMPD neither reprimanded nor disciplined the officers except through

24   verbal counseling. Further, the current training is inadequate and the need for proper training is

25   "so obvious" that the current training displays deliberate indifference. Further, Defendant Wilson's

26   supervision of Defendants Sigmund and Freeman was inadequate because he should have directed

27   them to pick Plaintiff up from the hot asphalt sooner.

28           "A suit against a governmental officer in his official capacity is equivalent to a suit against

the governmental entity itself." <u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991). Therefore, any official capacity claims should be analyzed together with claims against the entity. Under <u>Monell</u>, when a municipal policy of some nature is the "moving force" behind an unconstitutional action taken by municipal employees, the municipality will be liable. <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658 (1978). Liability exists where the unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by municipal officers, or where the constitutional deprivation is inflicted pursuant to governmental "custom." <u>Id.</u> A plaintiff can recover under three different theories: "commission," a local government implementing its official policies or established customs, such as inadequate training of governmental officials; "omission," the government's omission to an official policy, such as a failure to train; or "ratification," a policymaker's purposeful approval of an employee's unconstitutional conduct. <u>Clouthier v. County of Contra Costa</u>, 591 F.3d 1232, 1249-50 (9th Cir. 2010), <u>overruled on other grounds by Castro v. County of Los Angeles</u>, 833 F.3d 1060 (9th Cir. 2016).

Summary judgment is properly granted to Defendants on this claim. Plaintiff's harm was undoubtedly severe. The supervising officers who reviewed the body camera footage, including Defendant Wilson, also indicated that Plaintiff should have been taken off the ground sooner. These facts do not indicate, however, that Defendants have broadly failed to train. Accordingly, Plaintiff cannot assert that there was an omission, or failure to train officers, on the issue of hot asphalt. Indeed, the record indicates that the officers in this case received verbal reminders to be aware of the dangers of hot pavement, and a briefing was conducted after the incident to remind officers of their training. The Court finds that, even on the disputed facts, Defendant LVMPD trains its officers regarding the dangers of hot asphalt and other hot surfaces in the summer, and that the Defendant officers received that training and were aware of the dangers.

In sum, Plaintiff has failed to provide evidence that would indicate either that: Defendant LVMPD promulgated a policy of keeping people in custody on hot pavements for long periods of time; Defendant LVMPD failed to train the officers; or Defendant LVMPD ratified the alleged unconstitutional conduct. The Court finds that this incident was used as a teaching experience for

1   officers to remember their training and to be aware of the period of time a person detained is held

2   on the hot ground.

3          Separately, the Court finds that Plaintiff's Response to Defendants' Summary Judgment

4   Motion improperly raises a claim for supervisory liability against Defendant Wilson, under this

5   cause of action, for his role as a supervisor of the Defendant officers during Plaintiff's arrest. Cf.

6   Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1080 (9th Cir. 2008) (Ninth Circuit "precedents

7   make clear that where, as here, the complaint does not include the necessary factual allegations to

8   state a claim, raising such claim in a summary judgment motion is insufficient to present the claim

9   to the district court."). The Court does not find that the FAC gave Defendants fair notice of

10  Plaintiff's supervisory liability claim. See Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) ("A

11  defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her

12  personal involvement in the constitutional deprivation, or (2) a sufficient causal connection

13  between the supervisor's wrongful conduct and the constitutional violation.").

14         Accordingly, the Court grants summary judgment in favor of Defendant LVMPD as to

15  Plaintiff's municipal liability cause of action.

16                              **ii.  State Law Claims**

17         The Court now addresses Plaintiff's state law causes of action for negligence, negligent

18  supervision and training, intentional infliction of emotional distress, and battery, and Defendants'

19  discretionary immunity-act defense to these claims.

20                         **1.  Discretionary-Act Immunity**

21         The Court first takes up whether Defendants are entitled to discretionary act immunity.

22         Defendants argue that they are protected from the state law claims because they have

23  discretionary-act immunity and did not act in bad faith. Plaintiff responds that Defendants'

24  decisions were not based on considerations of social, economic, or political policy and therefore

25  discretionary immunity does not apply. Nevada law provides, in relevant part, that

26              no action may be brought . . . against an immune contractor or an
27              officer or employee of the State or any of its agencies or political
                subdivisions which is: . . . Based upon the exercise or performance
28              or the failure to exercise or perform a discretionary function or duty

1

2

> on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused.

3

4   Nev. Rev. Stat. § 41.032(2). In Martinez v. Maruszczak, 168 P.3d 720 (Nev. 2007), the Nevada

5   Supreme Court adopted the Berkovitz–Gaubert test to evaluate discretionary-act immunity under

6   Nevada Revised Statute § 41.032. This two-part test originated with two U.S. Supreme Court

7   decisions interpreting the Federal Tort Claims Act ("FTCA"), which mirrors Nevada Revised

8   Statute § 41.032(2). See Berkovitz v. United States, 486 U.S. 531 (1988); United States v. Gaubert,

9   499 U.S. 315 (1991).

10      Under this test, a governmental act or decision is entitled to discretionary-act immunity if

11  it (1) "involve[s] an element of individual judgment or choice and (2) [is] based on considerations

12  of social, economic, or political policy." Martinez, 168 P.3d at 729. This type of immunity may

13  protect even "frequent or routine decisions" at all levels of government, provided they "require

14  analysis of government policy concerns." Id. The Nevada Supreme Court explained that

15  "immunity will likely attach under the second criterion" to actions that are integral to governmental

16  planning or to the formulation of governmental policy, or if liability would disrupt the separation

17  of powers or "jeopardize the quality of the governmental process." Id. As an illustration, Nevada

18  Supreme Court distinguished between "the decision to create and operate a public hospital," which

19  is entitled to discretionary-act immunity, and "a [state] physician's diagnostic and treatment

20  decisions," which do not receive immunity as they "generally do not include policy

21  considerations." Id.

22      Importantly, there are two limitations on discretionary-act immunity. First, immunity does

23  not attach for actions taken in bad faith. Falline v. GNLV Corp., 823 P.2d 888, 891 (Nev. 1991);

24  Davis v. City of Las Vegas, 478 F.3d 1048, 1059 (9th Cir. 2007). In the context of an arrest

25  involving allegedly excessive force, an officer's action may be in bad faith if motivated by

26  "hostility toward a suspect or a particular class of suspects . . . or because of a willful or deliberate

27  disregard for the rights of a particular citizen or citizens." Id. at 1060. Second, acts taken in

28  violation of the Constitution cannot be considered discretionary. Mirmehdi v. United States, 689

- 25 -

1    F.3d 975, 984 (9th Cir. 2012); Nurse v. United States, 226 F.3d 996, 1002 (9th Cir. 2000).

2            The Court finds that Defendants are not entitled to discretionary-act immunity as to

3    Plaintiff's state law causes of action for negligence, intentional infliction of emotional distress,

4    and battery because the officers' alleged actions underlying these claims violated the Constitution.

5    See Koiro v. Las Vegas Metro. Police Dep't, 69 F. Supp. 3d 1061, 1074 (D. Nev. 2014), aff'd, 671

6    F. App'x 671 (9th Cir. 2016). The Court, however, finds that Defendant LVMPD is entitled to

7    discretionary-act immunity as to Plaintiff's Fourth Cause of Action asserting negligent supervision

8    and training against it. See Neal-Lomax v. Las Vegas Metro. Police Dep't, 574 F. Supp. 2d 1170,

9    1192 (D. Nev. 2008), aff'd, 371 F. App'x 752 (9th Cir. 2010) ("Because Nevada looks to federal

10   case law to determine the scope of discretionary immunity, and because federal case law

11   consistently holds training and supervision are acts entitled to such immunity, LVMPD is entitled

12   to discretionary immunity on this claim."); accord Vasquez-Brenes v. Las Vegas Metro. Police

13   Dep't, 51 F. Supp. 3d 999, 1013 (D. Nev. 2014), rev'd and remanded on other ground, 670 F.

14   App'x 617 (9th Cir. 2016).    Therefore, the Court grants Defendants summary judgment on

15   Plaintiff's negligent supervision and training cause of action. The Court will now separately

16   address whether the rest of Plaintiff's state law causes of action may proceed to trial.

17                        **2.  Negligence (Third Cause of Action)**

18           To prevail on a claim for negligence, a plaintiff must generally show that: (1) the defendant

19   owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the

20   legal cause of the plaintiff's injury; and, (4) the plaintiff suffered damages. Scialabba v. Brandise

21   Const. Co., 921 P.2d 928, 930 (Nev. 1996). The issues of proximate cause and reasonableness

22   usually present questions of fact for the jury. Thomas v. Bokelman, 462 P.2d 1020, 1022 (Nev.

23   1970). Defendants contend that, if the Court finds that the officers acted reasonably under the

24   circumstances, then this state law claim must fail as well. The Court incorporates by reference its

25   First Cause of Action's analysis and concludes a jury could find that the officers breached their

26   duty to Plaintiff by using excessive force to arrest him. The Court thus denies Defendants' motion

27   for summary judgment on this claim.

28           ///

### 3. Intentional Infliction of Emotion Distress (Fifth Cause of Action)

Defendants also ask this Court to grant summary judgment in their favor on Plaintiff's cause of action for intentional infliction of emotional distress. "To prevail on an intentional infliction of emotional distress claim, a plaintiff must prove (1) extreme and outrageous conduct; (2) intent or reckless disregard for the causing of emotional distress; (3) severe or extreme emotional distress; and (4) causation." Rivera v. Corr. Corp. of Am., 999 F.3d 647, 655 (9th Cir. 2021) (citing Olivero v. Lowe, 995 P.2d 1023, 1025 (Nev. 2000)). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community" and "'may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests.'" Maduike v. Agency Rent-A-Car, 953 P.2d 24, 26 (Nev. 1998); Chehade Refai v. Lazaro, 614 F. Supp. 2d 1103, 1122 (D. Nev. 2009); Lazaro, 614 F. Supp. 2d at 1122 ("police officers have been held liable for 'extreme abuse of their position'" (quoting Restatement (Second) of Torts § 46 cmt. e (1965))).

Defendants similarly contend here that, if the Court finds that the officers acted reasonably under the circumstances, then this state law cause of action must fail as well. As with several of Plaintiff's other causes of action, the Court finds that addressing this cause of action also turns on the resolution of factual disputes regarding the scope and extent of Defendants' actions. If a jury concludes that the officers intentionally threw Plaintiff onto the hot asphalt, while he was already handcuffed, and ignored his complaints of being in pain, stemming from contact with the hot asphalt, for up to ten minutes, this could constitute extreme and outrageous conduct taken in reckless disregard of causing Plaintiff emotional distress. As the Court has imposed a sanction against Defendants as to their asserted facts, and as the Plaintiff has adequately alleged disputed facts to establish liability, the Court denies summary judgment on this claim.

### 4. Battery (Sixth Cause of Action)

Lastly, Defendants contend that the inquiry for a battery claim is the same as for an excessive force claim, and therefore if the Court has found the officers acted reasonably, this claim

1    fails as well. "To establish a battery claim, a plaintiff must show that the actor (1) intended to cause

2    harmful or offensive contact, and (2) such contact did occur." <u>Switzer v. Rivera</u>, 174 F. Supp. 2d

3    1097, 1109 (D. Nev. 2001) (citing Restatement (Second) of Torts, §§ 13, 18). For the reasons

4    discussed in the First Cause of Action's analysis above, the Court concludes that a jury could find

5    that Defendants' contact with Plaintiff was intended and harmful and did occur. Thus, the Court

6    denies Defendants summary judgment on this cause of action too.

7

8              **V.     CONCLUSION**

9              **IT IS THEREFORE ORDERED** that Plaintiff Eric M. Crema's Motion for Sanctions

10   (ECF No. 39) is **GRANTED**.

11             **IT IS FURTHER ORDERED** that Defendants Las Vegas Metropolitan Police

12   Department, Officer Michael R. Freeman, Officer D. Sigmund, and Sergeant William M. Wilson's

13   Motion for Summary Judgment (ECF No. 40) is **DENIED** in part and **GRANTED** in part. The

14   second and fourth causes of action asserted against Defendant LVMPD are **DISMISSED**. The

15   Motion is **DENIED** as to the rest of the causes of action asserted against Defendants.

16             **IT IS FURTHER ORDERED** that the parties shall submit a joint pretrial order **by**

17   **October 20, 2023**.

18

19             **DATED:** <u>September 25, 2023</u>

20                                                       _____

21                                                       **RICHARD F. BOULWARE, II**

22                                                       **UNITED STATES DISTRICT JUDGE**

23

24

25

26

27

28